UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CYNTHIA M. GRIFFITHS, | ) | CASE NO. 1:09CV2453 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION** |
| SECURITY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

Cynthia M. Griffiths ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Insurance Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the Court REVERSES the Commissioner's decision and REMANDS this case for additional fact-finding, analysis and explanation:

I. **PROCEDURAL AND FACTUAL HISTORY**

On April 22, 2002, Plaintiff filed her first application for DIB alleging disability beginning April 1, 2001 due to anxiety and depression. Tr. at 157-169. The SSA denied Plaintiff's application on July 12, 2002 after Plaintiff failed to complete questionnaires sent to her by the SSA. *Id.* at 131-132. Plaintiff filed a second application for social security benefits on November 4, 2004 and the SSA denied this application on March 16, 2005. *Id.* at 128-129. Plaintiff did not appeal either of these determinations.

Plaintiff filed the current application for DIB on February 26, 2007 alleging disability beginning April 1, 2001. Tr. at 154. The SSA denied Plaintiff's application initially and denied it upon reconsideration due to res judicata. ECF Dkt. #s 15, 20-21. Plaintiff filed a request for a hearing before an administrative law judge. Tr. at 117.

On January 20, 2009, an Administrative Law Judge ("ALJ") conducted an administrative hearing where Plaintiff was represented by counsel. Tr. at 912. At the hearing, the ALJ heard testimony from Plaintiff and a vocational expert ("VE"). *Id*. On February 12, 2009, the ALJ issued a Notice of Decision - Unfavorable. *Id*. at 83-92. Plaintiff filed a request for review, which the Appeals Council denied. *Id*. at 6-8, 78.

On October 20, 2009, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On May 10, 2010, Plaintiff filed a brief on the merits. ECF Dkt. #15. On August 9, 2010, Defendant filed a brief on the merits. ECF Dkt. #20. Plaintiff filed a reply brief on January 5, 2011 with leave of Court. ECF Dkt. #25.

**II**.    **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ noted that Plaintiff receives Supplemental Security Income with a established onset date of February 26, 2007 based upon an application that she filed on February 26, 2007. Tr. at 83. In considering her DIB application, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, asthma, and irritable bowel syndrome. *Id*. at 86. The ALJ determined that Plaintiff's impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). *Id*. at 86-87. The ALJ specifically considered Plaintiff's impairments under Listing 3.03 for respiratory conditions, Listing 5.00 for digestive conditions, and Listing 12.04 for affective disorders. *Id*. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could not perform work involving: exposure to excessive environmental conditions such as dust, fumes, odors, and/or gases; more than only occasional contact with co-workers and/or the public due to moderate limitations in social functioning; more than simple, routine, repetitive one or two-step tasks; a fast-paced environment; or more than a few workplace changes. *Id.* at 87-88. Based upon the RFC finding, the ALJ determined that Plaintiff could not perform her past relevant work as a sales associate, but found that she could perform jobs existing in significant numbers in the national economy. Tr. at 91.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even

if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.  ANALYSIS

### A.  STEP THREE DETERMINATION

#### 1.  COMBINATION OF IMPAIRMENTS

Plaintiff first argues that the ALJ considered her impairments only on an individual basis and not in combination when he determined that her impairments did not meet or medically equal a Listing. ECF Dkt. #15 at 13. She asserts that the ALJ evaluated each of her impairments and explained why each did not meet a listing, but he failed to explain why the impairments combined did not meet a listing. *Id.*

The Court finds no merit to this assertion. At Step 3, the ALJ did individually discuss each of the impairments. Tr. at 86-87. However, "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health and Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990), citing *Gooch v. Sec'y of Health and Human Servs.*, 833 f2d 589, 592 (6th Cir. 1987).

Here, the ALJ stated that through Plaintiff's date last insured, she "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." Tr. at 86. He reviewed each impairment and reviewed the medical evidence as to each impairment. *Id.* at 88-90. The ALJ did that which he was required to do. Accordingly, the Court finds no merit to Plaintiff's assertion.

### 2. **LISTING 12.04C**

Plaintiff also contends that her asthma and mental impairments, when considered in combination, met or medically equaled Listing 12.04C and the ALJ erred in not finding so.

The Court finds no merit to Plaintiff's assertion. Listing 12.04C addresses only mental impairments and the impact and severity of those mental impairments. *See* Listing 12.04 (labeled "Affective Disorders"); Listing 12.04C (requiring "[m]edically documented history of a chronic affective disorder"). Listing 12.00C. Accordingly, Plaintiff's asthma could not meet or medically equal, either individually or in combination with her mental impairments, a listing dealing solely with mental impairments.

Plaintiff also asserts that substantial evidence does not support the ALJ's determination that her mental impairments did not meet or medically equal Listing 12.04C. ECF Dkt. #15 at 12-16. She first contends that the ALJ erred in determining at Step 3 that her mental impairment did not meet the "paragraph C" criteria of Listing 12.04 because he found that it caused less than a minimal limitation on her abilities to perform basic work activities. ECF Dkt. #15 at 15. Plaintiff submits that this finding is inconsistent with the ALJ's finding at Step Two that her bipolar disorder was a severe impairment. *Id*.

In Step 2 of his decision, the ALJ found that Plaintiff's bipolar disorder, asthma and irritable bowel syndrome were severe impairments. Tr. at 86. He further found that Plaintiff's impairments and symptoms "have limited the claimant's ability to perform the mental demands of basic work activities, including understanding and carrying out complex tasks." *Id*. At Step 3, the ALJ found that Plaintiff's bipolar disorder failed to satisfy the "C criteria" of Listing 12.04 because the impairment:

> has not caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and repeated episodes of decompensation, each of extended duration, or a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate, or an inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id*. at 87. Listing 12.04C requires:

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> > 1. Repeated episodes of decompensation, each of extended duration; or
> >
> > 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> >
> > 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing 12.04C.

The Court finds that Plaintiff's quoted part of the ALJ's Step 3 finding would be inconsistent with the ALJ's Step 2 finding because the ALJ's phrase "no more than a minimal limitation" implies that no severe impairment exists. *See Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 89-90 (6th Cir.1985)(an impairment can be found non-severe only if it could constitute "a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere with an individual's ability to work, irrespective of age, education and past work experience."); 20 C.F.R. § 404.1521(a)(an impairment or combination of impairments is not severe "...if it does not significantly limit your physical or mental ability to do basic work activities."). However, Plaintiff does not set forth the entirety of the ALJ's Step 3 finding as to Listing 12.04C, as the Court has set forth above. The ALJ's Listing 12.04C finding at Step 3 parallels the entirety of Listing 12.04C's language, including its conjunctive requirements; it does not simply determine that Plaintiff has no more than a minimal limitation of ability to do basic work as, as Plaintiff contends. Therefore, the Court finds that the ALJ's complete Listing 12.04C finding is not inconsistent with his Step 2 finding.

The Court will now determine whether the ALJ properly applied Listing 12.04C. Plaintiff erroneously asserts that her mental disorder and asthma combined to equal Listing 12.04C and the ALJ lacked substantial evidence to find otherwise. ECF Dkt. #15 at 15. As stated above, this argument fails because a non-mental impairment cannot be considered in determining whether a

-6-

claimant's impairments meet or equal Listing 12.04, which is solely a mental impairment Listing.

Nevertheless, upon review of the ALJ's Listing 12.04C analysis and Plaintiff's assertions in her reply brief, the Court concludes that substantial evidence does not support the ALJ's finding that Plaintiff's mental impairment did not medically equal the decompensation requirement of that Listing.  The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity.  20 C.F.R. § 404.1520.  In the third step of the analysis to determine a claimant's entitlement to DIB, it is the claimant's burden to bring forth evidence to establish that her impairments meet or are medically equivalent to a listed impairment.  *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987).  In order to meet a listed impairment, the claimant must show that her impairment meets all of the requirements for a listed impairment.  *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987).  An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity.  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

An impairment or combination of impairments is considered medically equivalent to a listed impairment "* * *if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments."  *Land v. Sec'y of Health and Human Servs*., 814 F.2d 241, 245 (6th Cir.1986)(per curiam).  In order to show that an unlisted impairment or combination of impairments is medically equivalent to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sullivan*, 493 U.S. at 531.  Generally, an ALJ should have a medical expert testify and give his opinion before determining medical equivalence.  20 C.F.R.§ 404.1526.

The Sixth Circuit has held that a heightened articulation standard is not required of an ALJ at Step 3 of the sequential evaluation process.  *See Bledsoe v. Barnhart*, No. 04-4531, 2006 WL 229795, at 411 (6th Cir. Jan.31, 2006), citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir.1986).  However, *Bledsoe* and *Dorton* make clear that substantial evidence must support the ALJ's findings and the findings must be legally sufficient and clear.  *Id*.

-7-

Here, the ALJ reviewed no medical evidence relating to Plaintiff's mental impairment at Step Three of his analysis. Tr. at 86-87. However, he did conduct an extensive review of the medical evidence and made factual findings at Step 4 of his analysis. *Id*. at 88-90. He also made findings at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the Listings and he cited the requirements of Listing 12.04 and found that Plaintiff did not meet them. *Id*. at 86-87.

Based upon *Bledsoe* and *Dorton*, these findings would be sufficient to uphold the ALJ's decision if substantial evidence supports them. Substantial evidence supports the ALJ's finding that Plaintiff's severe mental impairment did not meet Listing 12.04C. Plaintiff offers no evidence in support of a finding that her bipolar disorder meets the requirements of Listing 12.04C. Further, the Court has already rejected Plaintiff's assertion that the ALJ's Step 2 finding of severity contradicted his Step 3 finding since the ALJ's Step 3 finding read in its entirety mirrors the language of Listing 12.04C and does not focus only on the "minimal limitation" language that Plaintiff advances.

Even if Plaintiff's bipolar disorder met the first part of Listing 12.04C, substantial evidence nevertheless supports the ALJ's determination that her impairment does not meet any of the last three criteria of the Listing, one of which is required in order to meet the Listing. That is, even if evidence of Plaintiff's bipolar disorder established a "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support," the evidence fails to establish that she met the decompensation prong, the marginal adjustment prong, or the highly supportive living arrangement prong.

Plaintiff has not directed the Court to any evidence that suggests that she lived in a highly supportive living arrangement or that even a minimal increase in mental demands or a change in the environment would be predicted to cause her to decompensate. Plaintiff does cite to evidence establishing a number of emergency room visits and hospitalizations due to her bipolar disorder. ECF Dkt. #15 at 13-16. However, in order to meet the decompensation prong of Listing 12.04C, decompensation episodes must meet either a durational requirement or a frequency requirement.

Section 12.00 is the Introduction section to the Mental Disorders Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. It provides that:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.
>
> The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

Listing 12.00C4.

The ALJ found that Plaintiff had experienced only one to two episodes of decompensation, each of extended duration. Tr. at 87. At Step 4, he reviewed Plaintiff's hospitalizations and their duration during the relevant time period, noting that she was hospitalized overnight in July 2000 for severe depression, hospitalized for six days in October 2000 for slitting her wrists in a suicide attempt, and hospitalized for five days in April 2001 for overdosing on Klonopin in a suicide attempt. *Id*. at 88-89. The ALJ also noted Plaintiff's sporadic treatment for her bipolar disorder due to an inability to pay for treatment and medication. *Id.* at 88. He further cited to Plaintiff's noncompliance with treatment and medication even when she was able to seek them. *Id.*

In her brief, Plaintiff cites to the hospitalizations cited by the ALJ and highlights additional hospitalizations that exist in the record. She cites to the July 2000 overnight hospitalization and the October 2000 six-day hospitalization, neither of which is within her insured period for the instant case. ECF Dkt. #15 at 13. She also cites to an April 4, 2001 through April 5, 2001 hospital admission for depression, the April 6, 2001 through April 11, 2001 hospitalization for a suicide attempt, and an April 11, 2001 to April 17, 2001 hospitalization for suicidal depression. ECF Dkt. #15 at 14. Plaintiff also cites an April 30, 2001 admission for a suicide attempt, but indicates a question mark for the date of discharge. *Id.* She further notes a June 21, 2001 emergency room

presentation for severe depression after taking six sleeping pills and running out of her medications. *Id.*, citing Tr. at 337-340.

Even accepting Plaintiff's cited hospitalizations and admissions, the Court finds that substantial evidence supports the ALJ's Step Three finding that Plaintiff's mental impairment did not meet the decompensation requirement of Listing 12.04C. None of Plaintiff's hospitalizations lasted for at least two weeks as required by the Listing. Accordingly, Plaintiff cannot show that her impairment meets all of the requirements for Listing 12.04C. *Sullivan*, 493 U.S. at 530 (an impairment that meets only some of the medical criteria and not all does not qualify, despite its severity).

However, as argued by Plaintiff, substantial evidence does not support the ALJ's determination that Plaintiff's hospitalizations, admissions, treatment, and medication alterations, did not medically equal the episodes of decompensation required for Listing 12.04C. The ALJ offers no real insight as to his finding on medical equivalence and the medical record appears to support such a finding. While Plaintiff's treatment, medication alterations and hospitalizations do not amount to the frequency or duration of decompensation defined under Listing 12.00C4, Plaintiff notes in her reply brief that the last sentence of Listing 12.00C4 states that:

> If you have experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence.

Listing 12.00C4. Without adequate explanation by the ALJ in light of the record, the Court finds that substantial evidence does not support the ALJ's medical equivalence determination.

Accordingly, the Court remands this case for additional fact-finding, analysis and articulation as to whether Plaintiff's bipolar disorder and medication alterations, treatment and hospitalizations resulting therefrom, constitute medical equivalence to Listing 12.04C. The ALJ may wish to employ the use of a medical expert to aid him in this determination. 20 C.F.R. § 404.1526(b); SSR 96-6p.

Since the Court remands the instant case for further evaluation and reconsideration at Step 3, the Court will not address Plaintiff's RFC and credibility arguments as they may be impacted by

the ALJ's Step 3 reconsideration on remand. The Court cautions the ALJ, however, that in assessing Plaintiff's credibility, the ALJ cited Plaintiff's noncompliance with treatment and medication, but failed to indicate whether the noncompliance issues had to do with Plaintiff's bipolar disorder itself or an inability to pay. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009)("very failure to seek treatment is simply another symptom of the disorder itself"); SSR 96-7p (ALJ must consider claimant's reasons for not seeking regular treatment, including the inability to pay). On remand, the ALJ should address this issue more thoroughly as well.

## VI.    REOPENING OF 2004 CLAIM

Plaintiff also asserts that the ALJ de facto reopened her 2004 application for SSI and DIB when he found her not disabled and denied a reopening, but nevertheless went on to evaluate the medical and other evidence for the period of time that had previously been adjudicated. ECF Dkt. #15 at 10. Plaintiff contends that if her 2004 application were reopened and a determination was made that she was disabled prior to December 31, 2003, her date last insured found by the ALJ here, then the established onset date for her SSI award, which was February 26, 2007, would change to the date that she was found to be disabled. *Id*.

Defendant addresses this issue in a footnote, indicating that the ALJ's review of the evidence between Plaintiff's alleged onset date of April 1, 2001 and her date last insured of December 31, 2003 did not constitute a reopening of her 2004 application for SSI and DIB. ECF Dkt. #20 at 7, fn 3. Defendant explains that the ALJ implicitly addressed res judicata when he stated that her request to reopen a prior application implied an appeal of her SSI established onset date. *Id*., citing Tr. at 83. Defendant contends that the ALJ denied her request for reopening when he noted in his decision that he reviewed all of the evidence to determine whether Plaintiff had submitted "new and material" evidence for a reopening and he deemed reopening inappropriate because he found her not disabled through her date last insured. *Id.*

In his decision, the ALJ stated that he was denying Plaintiff's request to reopen because he found her not to be disabled through her date last insured in the current case. He also made reference to evidence characterized as "new and material" by Plaintiff in requesting the reopening. However, it does not appear that the ALJ applied the reopening standard in his determination. Since

-11-

the ALJ failed to address and apply the proper reopening standard, and since the Court has remanded the instant case, the ALJ's reason for denial of the reopening is not sufficient. Accordingly, the ALJ shall address the reopening of Plaintiff's prior application upon remand of the instant case with application of the proper standard. *See* 20 C.F.R. § 404.988.

## VII. **CONCLUSION**

For the foregoing reasons, the Court REVERSES the Commissioner's decision and REMANDS the instant case for additional fact-finding, articulation and reconsideration of the ALJ's Step 3 finding on medical equivalence to Listing 12.04C. The ALJ should also address the issue of reopening of Plaintiff's prior application.

DATE: January 7, 2011              */s/George J. Limbert*
                                    GEORGE J. LIMBERT
                                    UNITED STATES MAGISTRATE JUDGE